*Northern District*

No. 4754

**GEORGE W. DONOVAN CO., INC.**

**v.**

**EDWARD F. FAY, JR.**

(August 6, 1954)

*Eno, J.* This is an action of contract by which the plaintiff corporation seeks to recover a commission for procuring a purchaser for the property of the defendant. The declaration is in two counts, the first alleging its employment by the defendant and procuring a customer for the defendant's property who was "ready, willing and able" to purchase the premises on defendant's terms, and that both the customer and defendant entered into "a valid written agreement for the purchase and sale" of the premises; "wherefore the plaintiff claims a commission." The second count was "a common count upon a count annexed for said cause of action."

The report is silent in both counts as to the amount claimed for said commission.

The answer contains in addition to a general denial, the following allegations:

> "The plaintiff's assignor, Skinner and Donovan, agreed to bring about a sale of the property at 100-102 Henry Street, Cambridge, for $12,600. and to receive payment of a commission from the purchase price thereof, that the Plaintiff's assignor did not bring about a sale of said property for $12,600., that there was no sale of such property for that purchase price or any purchase price, and that the defendant did not receive such purchase price or any purchase price from anyone, wherefore the defendant owes the plaintiff nothing. And further answering the defendant says that if any agreement was entered into between the Plaintiff or the Plaintiff's assignor and the defendant, which the defendant denies, that there was a condition precedent to such agreement and to the account mentioned in the Plaintiff's declaration which was required under the G.I. Bill of Rights, so-called, Title III, Servicemen's Readjustment Act of 1944, Public Law 346," and that "if he ever entered into an agreement as alleged in the Plaintiff's declaration, which the Defendant denies, the said agreement was cancelled by the Plaintiff, wherefore the Defendant owes the Plaintiff nothing."

There was evidence that one George W. Donovan received a telephone call from the defendant's wife telling him the subject property was for sale and asking him to appraise the same; that he went there with one William Skinner, Jr. and placed a value of about $12,000 on the property; that the defendant Fay and his wife agreed that the plaintiff corporation might list the property and that the plaintiff corporation should try to find a customer for $13,000, and that it was understood that a commission of 5% would be paid therefor; that the plaintiff corporation procured a customer who made a deposit of $100.00 and signed an offer in the following form:

"To: Skinner & Donovan          Date: May 25, 1953

I make this offer to (Edw. F. Fay, Jr.) for the property located in (Cambridge) on (Henry) Street, no. (100-102) comprising (5000) sq. ft. of land more or less, with the buildings thereon of $(12,600—) to be paid as follows (12,600) cash.

This offer is good until (5/28/53) on or before which time it is to be accepted by seller and when accepted constitutes the whole agreement with respect to purchase, but if requested I agree to sign a long form real estate agreement and in either event, I agree to consummate the transaction within 60 days in accordance with these terms. The property is to be conveyed by a good and sufficient deed subject to zoning laws and restrictions of record if any. Rents, taxes, and water rates are to be adjusted as of date of conveyance.

I hand you herewith $(100) to bind this offer, to be returned to me if offer is not accepted.

This offer and deposit subject to approval by G. I. appraiser for above amounts.

It is understood that a commission of $(600) will be paid by the seller to Skinner & Donovan.

Accepted (Edward F. Fay, Jr.) Signed (M. M. Giacoppo) (Marion R. Fay)"

There was further evidence that said Donovan talked with the defendant Fay on the telephone re-

garding the offer of the customer, Matthew M. Giacoppo, and was told that the defendant would accept the offer if the plaintiff corporation would take a commission of $600.00, to which Donovan agreed.

It was agreed at the trial that the form of offer was accepted by both Edward F. Fay, the defendant, and his wife, Marion R. Fay.

There was also evidence that the North Avenue Savings Bank received a mortgage application from said Matthew M. Giacoppo on June 16, 1953 for a loan of $12,000. on a purchase price of $12,600; that a V. A. appraisal was requested on July 11, 1953; that a certificate of reasonable value was received from the V. A. on July 27, 1953 in the amount of $12,400; that at that time the bank would have loaned $12,000. on a purchase price of $12,600; that the applicant withdrew this mortgage application on December 15, 1953; that sometime in July, about sixty days after the date of the signing of the agreement between the defendant Fay and Matthew M. Giacoppo, Mrs. Fay called Donovan and asked how the sale to Giacoppo was progressing; that he told her they were waiting on the V. A. appraisal; that there might be some delay; that this was all right with Mrs. Fay and no objections were made; that on August 3, 1853 after being informed that the property had been appraised for $12,400. Donovan forwarded an extension of agreement to Mr. Fay setting forth the price at $12,400. and suggesting that the defendant sell for that price; that Donovan received a letter from the defendant Fay and his wife postmarked August 5, 1953 stating that the deal was off since the sale had not gone through within 60 days and that they hadn't met seller's terms; that on August 10, 1953 Donovan received another letter from the defendant to the same effect and to notify the buyer.

There was also testimony that Mrs. Marion R. Fay, wife of the defendant, talked with Donovan on July

28th or 29th, that this was more than 60 days after the date of the agreement signed by the defendant Fay, herself and Giacoppo, that she made no objection that the sale had not yet gone through; that the difference of $200. in the purchase price didn't make any difference and was not the reason for the sale not going through; that the defendant refused to sell because he got a job after the final date for performance of the agreement between the Fays and Giacoppo.

Further, there was evidence from Mr. Giacoppo that he applied to the North Avenue Savings Bank for a mortgage; that he was ready, willing and able to buy for $12,400 on August 3, 1953 after the V. A. had appraised the property for that amount; that upon the Fays refusing to sell he applied to the V. A. for a revaluation of the property; that the property was revalued for $12,600; that he was ready, willing and able to purchase for $12,600; that he tried to buy the property but the defendant Fay refused to sell; that he abandoned his efforts to buy on October 8, 1953 after the defendant Fay paid him $100.00 which payment was in addition to his deposit and that he signed a release for Fay; that the defendant at no time set a date for performance or made demand on him for performance.

The plaintiff filed the following requests for rulings which were disposed of by the trial judge [MacDonnell, S. J.] as indicated below:

"1. In this case where the defendant accepted the plaintiff's customer by entering into a valid written contract of sale with him, it is not necessary for the plaintiff to prove that the purchaser was ready, willing and able. When the valid written contract was executed the plaintiff's commission was earned. *Johnson v. Holland*, 211 Mass. 363, 364; *Stone v. Melbourne*, 326 Mass. 372."

"No ruling — therefore denied."

"2. If the principal refuses to sell for some reason ᴜ..ᴇʀ than customer's ability, the principal cannot later

avail himself of such inability as a defense. *Whitkin v. Markarian,* 238 Mass. 334."

"Granted — But in the case at Bar the Principal's Contract with the agent had expired and the principal had refused to extend the time. The contract was effectually cancelled. This I find."

"3. In this case where the defendant entered into an agreement with a customer procured by the Plaintiff for the sale of the subject property at a price of $12,600. subject to G.I. appraisal, and the defendant's wife and agent told the plaintiff not to lose the sale for a couple of hundred dollars and after the property had been appraised by the G.I. appraiser for $12,400. the customer offered and was ready, willing and able to buy at that price, which fact was communicated to the defendant while the broker's authorization was still in effect, the broker procured a customer, ready, willing and able to buy on the defendant's terms."

"Denied — I find price was always $12,600 and that no buyer was procured for $12,600 until after cancellation."

"4. In this case where the initial listing was made by both husband and wife and communications regarding the sale of said property were signed by both husband and wife, and the wife, in the husband's absence, carried on business regarding the sale of said property there is sufficient evidence to find that the wife was the agent of the husband."

"Granted but neither wife or husband did anything to extend contractural period."

"5. The agreement to buy and sell entered into by the customer, Matthew M. Giacoppo, and the defendant was specifically enforceable in equity by either the customer or the defendant."

"Denied — the principal cancelled the contract with the buyer and procured a bonafide release."

"6. A broker who obtains an enforceable agreement on the principal's terms has earned a commission. *Johnson v. Holland,* 211 Mass. 363."

"Granted — But in this case at Bar the broker did

not procure the customer until long after expiration of contract of purchase and has no rights at this time."

The trial judge also granted or found as facts the following requests for rulings filed by the defendant:

"1. The plaintiff cannot recover under count one of the declaration on the pleadings and the evidence as it was the understanding and agreement of the defendant and the plaintiff's assignor or predecessor that the defendant's premises were to be sold for $12,600.00 before the plaintiff's assignor or predecessor was entitled to its commission of $600.00, and the evidence does not disclose such sale.

2. It was the understanding and agreement of the defendant and the plaintiff's assignor or predecessor that the plaintiff's assignor or predecessor was to be paid its commission of $600.00 from the purchase price paid for the property of the defendant.

3. It was the understanding and agreement of the defendant and the plaintiff's assignor or predecessor that the plaintiff's assignor or predecessor was to bring about a passing of papers, and actual transfer of title, or a consummation of the transaction for $12,600 before a commission was to be paid.

"4. The burden is on the plaintiff not only to show that the plaintiff's assignor or predecessor had secured an actual transfer of title to the premises, or a consummation of the transaction on the defendant's terms in order to recover.

5. The burden is on the plaintiff not only to show that the plaintiff's assignor or predecessor had procured a buyer who was ready, willing and able to purchase the defendant's property on the defendant's terms, but also to prove that a binding contract was entered into with the defendant and the buyer, and that the agreed purchase price thereof was paid to the defendant.

6. The plaintiff cannot recover under count one of the declaration on the pleadings and the evidence as there was no sale of the premises on the defendant's terms.

7. The plaintiff cannot recover under count one of

the declaration on the pleadings and the evidence as the sole buyer produced by the plaintiff's assignor or predecessor was not able to pay the psrchase price thereof as set by the defendant as said purchase price exceeded the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator of Veterans Affairs, a G.I. appraiser so-called.

8. The plaintiff cannot recover under count one of the declaration on the pleadings and the evidence as the sole buyer produced by the plaintiff's assignor or predecessor was not bound to consummate the transaction as reasonable value thereof as determined by a proper appraisal made by an appraiser designated by the Administrator of Veterans Affairs, a G.I. appraiser so-called.

9. The offer and acceptance of 5/25/53 was not a binding contract unless the terms of purchase for the 'veteran' buyer complied with an appraisal in accordance with United States Code (1946 Edition), Supplement IV, Title 38, Section 694a.

10. The offer and acceptance of 5/25/53 was not a binding contract which the defendant could enforce on August 3, 1953 or anytime thereafter.

11. The offer and acceptance of 5/25/53 expired by its own limitations on August 3, 1953.

12. The letter of August 3, 1953 from the plaintiff's assignor or predecessor is an admission from the plaintiff's assignor or predecessor that it could not sell the defendant's property upon the terms of the defendant at that time, and therefore the plaintiff cannot recover.

13. The letter of August 3, 1953 from the plaintiff's assignor or predecessor is an admission from the plaintiff's assignor or predecessor that the defendant's selling price did not conform to the G.I. appraisal, so-called, as required by United States Code (1946 Edition), Supplement IV, Title 38, Section 694a.

14. The letter of August 3, 1953 from the plaintiff's assignor or predecessor with the enclosed Agreement of Sale, labeled an Extension of Agreement, was materially

different from the terms accepted by the defendant on May 25, 1953, and constituted a new offer which the defendant was not bound to accept.

15. The defendant revoked the authority of the plaintiff's assignor or predecessor before the plaintiff's assignor or predecessor brought about a sale or transfer of the premises on the defendant's terms.

16. The plaintiff cannot recover under count two of the declaration so long as the agreement with the plaintiff's assignor or predecessor was executory."

There was a finding for the defendant, after which the plaintiff filed a motion for a new trial for the following reasons:

"1. The verdict is against the law.

2. The verdict is against the evidence and the weight of the evidence.

3. The denial of the plaintiff's requests for rulings numbered 1, 3, 5.

4. The allowance of the defendant's requests for rulings numbered 1 to 16 inclusive.

5. The Court's ruling that 'neither husband or wife did anything to extend the contractural period' — request No. 4 of Plaintiff.

6. The Court's ruling that 'in the case at Bar the broker did not procure the customer until long after the expiration of the contract of purchase and has no rights at this time'. Ruling on plaintiff's request No. 6.

7. The Court's ruling that 'the price was always $12,600 and that no buyer was procured for $12,600 until after cancellation'. Ruling on plaintiff's request No. 3.

8. The Court's ruling that 'the broker had to effect an actual sale on the evidence in this case'. Ruling on defendant's request No. 1.

9. The Court's ruling that as a matter of law the plaintiff had to effect an actual sale. Rulings on defendant's request 4, 5 and 6.

10. The Court's ruling that on the evidence that the defendant's property was to be sold for $12,600

before the plaintiff was entitled to it's commission. Ruling to defendant's request No. 2.

11. The Court's ruling that the plaintiff was to be paid its commission of $600.00 from the purchase price paid for the property of the defendant. Ruling on defendant's request No. 3.

12. The Court's ruling that the contract of sale between the customer and the defendant was at no time specifically enforceable in equity because the principal subsequently cancelled the contract with the buyer and obtained a release. Ruling plaintiff's request No. 5.

13. The Court's finding that the contract of employment of the broker plaintiff and the contract of sale between the defendant seller and the customer procured by the plaintiff broker are the same and that the broker's rights depend solely on the contract of sale. Court's finding on plaintiff's requests No. 2, 4 and 6."

"The plaintiff claims to be aggrieved by the denial of its requests for rulings numbered 1, 3 and 5, by the Court's rulings that:

a. 'Neither husband or wife did anything to extend the contractural period.'

b. 'In the case at Bar the broker did not procure the customer until long after the expiration of the contract of purchase and has no rights at this time.'

c. 'The price was always $12,600 and that no buyer was procured for $12,600 until after cancellation.'

d. 'The broker had to effect an actual sale on the evidence in this case.'

e. As a matter of law the plaintiff had to effect an actual sale.

f. On the evidence that the defendant's property was to be sold for $12,600 before the plaintiff was entitled to its commission.

g. The plaintiff was to be paid its commission of $600.00 from the purchase price paid for the property of the defendant.

h. The contract of sale between the customer and the defendant was at no time specifically enforceable

in equity because the principal subsequently cancelled the contract with the buyer and obtained a release.

i. The contract of employment of the broker plaintiff and the contract of sale between the defendant seller and the customer procured by the plaintiff broker are the same and that the broker's rights depend solely on the contract of sale.

and by the Court's granting of the defendant's requests for rulings numbered 1 to 16 inclusive and by the denial of the motion for a new trial."

The report states that it contains all the evidence material to the questions reported.

At the outset we wish to mention that this action is brought by a corporation, "George W. Donovan Co., Inc.," but the agreement of the defendants was to pay a commission to "Skinner & Donovan." This matter has not been raised by the defendants, however, and we treat it as having been waived.

The plaintiff argues that the defendants entered into a valid agreement to sell their property and, therefore, the plaintiff has earned its commission. *Stone v. Melbourne*, 326, Mass. 372.

We cannot agree with that proposition and believe that the facts do not warrant such a conclusion.

The plaintiff presented the defendants with only an offer to purchase the property for $12,600 which they accepted subject however to two conditions, one being that the "offer and deposit was subject to approval by G.I. appraiser for" that amount, and the other that the transaction was to be consummated within 60 days.

Neither of these conditions was met within that time, after which the defendants notified the plaintiffs, "that the deal was off." See *E. A. Strout Realty Agency, Inc. v. Gargan*, 328 Mass. 524.

We find it unnecessary to review each individual request for rulings, as we conclude that there was no prejudicial error in their handling by the trial judge, nor in his denial of plaintiff's motion for a

new trial and rulings thereon. Therefore, the report is to be dismissed.

Joseph J. Schuler, for the plaintiff.

Charles A. Watson, for the defendant.